UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------------------X
DONALD F. HERLIHY, JR.,

                         Plaintiff,                    06 CV 407 (SJ)(RML)

     - against -

                                                <u>MEMORANDUM<br>AND ORDER</u>

THE CITY OF NEW YORK; RAYMOND W.
KELLY, Police Commissioner; GEORGE A. GRASSO,
First Deputy Commissioner; NELDRA M. ZEIGLER,
Deputy Commissioner, Office of Equal Employment
Opportunity; RAFAEL PINIERO, Chief, Personnel
Bureau; GEORGE W. ANDERSON, Deputy Chief,
Executive Officer, Personnel Bureau; MICHAEL
O'NEILL, Deputy Chief, Employee Relations Section;
KEVIN HOLLORAN, Deputy Inspector, Commanding
Officer, Medical Division; DANIEL SWEENEY,
Sergeant, Counseling Services Unit; SUZANNE
GIMBLET, Detective, Counseling Services
Unit; MICHAEL BAHRENBURG, Police Officer,
Counseling Services Unit; SAM WILLIS, Counseling
Services Unit; CHRISTINE CARLOZZI, Detective,
Counseling Services Unit; CHARLES V. CAMPISI, Chief,
Internal Affairs Bureau; ARIANNA DONOVAN, Captain,
Internal Affairs Bureau; EDWARD A. THOMPSON,
Captain, Internal Affairs Bureau, Group 27; VALLUZZI,
Captain; DOHERTY, Lieutenant, PBMS Investigations Unit,
each being sued individually and in their official capacities
as employees of the Police Department City of New York,

                          Defendants.
-------------------------------------------------------------------------X

A P P E A R A N C E S :

JEFFREY L. GOLDBERG, P.C.
2001 Marcus Avenue, Suite 510
Lake Success, NY 11042
By:     Eric Sanders, Esq.
Attorney for Plaintiff

NYC LAW DEPARTMENT
Office of the Corporation Counsel
100 Church Street, Room 2-300
New York, NY 10007
By:     Eric Jay Eichenholtz, Esq.
Attorney for Defendants

JOHNSON, Senior District Judge:

Plaintiff Donald F. Herlihy, Jr. ("Plaintiff"), a detective in the New York

City Police Department ("NYPD"), brings this action pursuant to the Racketeer

Influenced and Corrupt Organizations Act ("RICO"), Title VII of the Civil Rights

Act of 1964 ("Title VII"), the Americans with Disabilities Act ("ADA"), 42 U.S.C.

§§ 1981, 1983, and 1985(3), the New York State and New York City Human

Rights Laws and New York common law against the City of New York and

twenty-one NYPD officials (collectively "City Defendants").  The NYPD officials

named in the complaint are Raymond W. Kelly, George A. Grasso, Rafael Piniero,

George W. Anderson, Michael P. O'Neill, Charles Carlozzi, Michael Bahrenburg,

Sam Willis, Paul Rayward, Alberto Martinez, Arianna Donovan, Neldra M.

Zeigler, Kevin Holloran, Daniel Sweeney, Suzanne Gimblet, Christine Carlozzi,

Charles V. Campisi, Edward A. Thompson, Captain Valluzzi (sic), and Lieutenant

Doherty (sic).

On October 21, 2005, Plaintiff was arrested by NYPD officers because they thought that he was driving his police vehicle while under the influence of alcohol. Plaintiff was held at the 7th Precinct but did not take a breathalyzer test when asked. Disciplinary charges were filed against Plaintiff and he was ordered to report to the NYPD Counseling Services Unit. Plaintiff claimed that he was not an alcoholic despite the NYPD's belief to the contrary, and that he was not intoxicated on the night that he was arrested. Plaintiff was ordered to enroll himself in a treatment program, and was repeatedly suspended when he refused to do so.

Plaintiff alleges in his complaint that he has been the victim of discrimination because City Defendants regarded Plaintiff as an alcoholic. Moreover, Plaintiff claims that City Defendants knew or should have known that Plaintiff was not an alcoholic, but referred Plaintiff to an inpatient and outpatient treatment center anyway. Plaintiff further claims that the treatment center that he was sent to[1] knew or should have know that he was not an alcoholic, but proceeded to engage in unnecessary medical treatment, duplicative diagnostic testing, miscoding or upcoding of services, bundling and unbundling of services, and forced time in isolation for detoxification. Plaintiff claims that incompetence and

---

[1] It is unclear from Plaintiff's complaint whether he was sent to Marworth, Bridge Back to Life, or The Maxwell Institute. Plaintiff only alleges that he was sent to a program such as those named.

negligence are not the causes of his placement in and treatment at rehabilitative services. Rather, Plaintiff alleges that he is a pawn in Defendants' scheme to defraud insurance carriers for their own financial benefit. Specifically, Plaintiff alleges that the only reason City Defendants referred Plaintiff to a treatment center was so that the treatment center could make money and deliver financial kickbacks to members of the NYPD's Counseling Services Unit. Plaintiff further alleges that City Defendants' scheme resulted in the deprivation of his rights under the First, Fourth, and Fourteenth Amendments. City Defendants now bring this Motion for Judgment on the Pleadings pursuant to Federal Rule of Civil Procedure 12(c).

## STANDARD

When considering a motion to dismiss under Federal Rule of Civil Procedure 12(c), courts are to apply the same standard applicable to a motion under Rule 12(b)(6). See Sheppard v. Beerman, 18 F.3d 147, 150 (2d Cir.1994). Under that standard, "a court must accept the allegations contained in the complaint as true, and draw all reasonable inferences in favor of the non-movant." Id. at 150. Courts should not grant dismissal "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Conley v. Gibson, 355 U.S. 41, 45-46 (1957). "At the [motion to dismiss] stage, 'the issue is not whether a plaintiff is likely to prevail ultimately, but whether the claimant is entitled to offer evidence to support the claims. Indeed it may appear

4

on the face of the pleading that a recovery is very remote and unlikely but that is

not the test.'" Chance v. Armstrong, 143 F.3d 698, 701 (2d Cir.1998) (quoting

Branham v. Meachum, 77 F.3d 626, 628 (2d Cir.1996)); see also Gant v.

Wallingford Bd. of Educ., 69 F.3d 669, 673 (2d Cir.1995).

## A. RICO Claims

To establish a RICO claim, a plaintiff must show: "(1) a violation of the

RICO statute, 18 U.S.C. § 1962; (2) an injury to business or property; and (3) that

the injury was caused by the violation of Section 1962." Pinnacle Consultants, Ltd.

v. Leucadia Nat'l Corp., 101 F.3d 900, 904 (2d Cir.1996) (citing First Nationwide

Bank v. Gelt Funding Corp., 27 F.3d 763, 767 (2d Cir.1994)). Section 1962(c), the

section relevant here, makes it unlawful:

> for any person employed by or
> associated with any enterprise
> engaged in, or the activities of which
> affect, interstate or foreign commerce,
> to conduct or participate, directly or
> indirectly, in the conduct of such
> enterprise's affairs through a pattern
> of racketeering activity...

18 U.S.C. § 1962(c). To establish a violation of 18 U.S.C. § 1962(c) then, a

plaintiff must show "(1) conduct (2) of an enterprise (3) through a pattern (4) of

racketeering activity." Sedima, S.P.R.L. v. Imrex Co., 473 U.S. 479, 496 (1985);

see also Cofacredit, S.A. v. Windsor Plumbing Supply Co. Inc., 187 F.3d 229, 242

(2d Cir.1999); <u>Azrielli v. Cohen Law Offices</u>, 21 F.3d 512, 520 (2d Cir.1994).

The requirements of section 1962(c) must be established as to each individual

defendant.  <u>See</u> <u>United States v. Persico</u>, 832 F.2d 705, 714 (2d Cir.1987), <u>cert.</u>

<u>denied</u>, 486 U.S. 1022 (1988) ("The focus of section 1962(c) is on the individual

patterns of racketeering engaged in by a defendant, rather than the collective

activities of the members of the enterprise, which are proscribed by section

1962(d)").

When a plaintiff bases a RICO claim on predicate acts that include fraud,

as here, the pleading of those predicate acts must satisfy the particularity

requirement of Federal Rule of Civil Procedure 9(b) ("Rule 9(b)").  <u>See</u> <u>Gregoris</u>

<u>Motors v. Nissan Motor Corp.</u>, 630 F. Supp. 902, 912-13 (E.D.N.Y.1986).  Rule

9(b) provides that "[i]n all averments of fraud or mistake, the circumstances

constituting fraud or mistake shall be stated with particularity.  Malice, intent,

knowledge, and other condition of mind of a person may be averred generally."

Fed.R.Civ.P. 9(b).  Allegations of fraud must therefore specify the fraudulent

statement, the time, place, speaker, and content of the alleged misrepresentations,

<u>see</u> <u>Luce v. Edelstein</u>, 802 F.2d 49, 54 (2d Cir.1986) (citations omitted), and

factual circumstances giving rise to a "strong inference" that the defendant had the

requisite fraudulent intent, <u>see</u> <u>Ouaknine v. MacFarlane</u>, 897 F.2d 75, 80 (2d

Cir.1990) (citations omitted).  Specifically, the complaint must allege "(1) specific

facts; (2) sources that support the alleged specific facts; and (3) a basis from which an inference of fraud may fairly be drawn." Crystal v. Foy, 62 F. Supp. 422, 425 (S.D.N.Y.1983).

City Defendants argue that Plaintiff's RICO claims must be dismissed because the predicate acts on which they are based are not pled with sufficient particularity. Moreover, City Defendants contends that Plaintiff's RICO claims must be dismissed because they do not allege with any specificity which individuals engaged in allegedly fraudulent acts.

### 1. Specificity as to Fraud

In order to establish mail fraud, plaintiff must allege that the defendant (1) participated in a scheme to defraud; (2) knowingly used the mails to further the scheme; and (3) had the specific intent to defraud. United States v. Rodolitz, 786 F.2d 77, 80 (2d Cir.1986), cert. denied, 479 U.S. 826 (1986). As stated above, each of these elements must be made out by allegations that meet the Rule 9(b) standard for sufficient particularity. Frota v. Prudential-Bache Securities, Inc., 639 F. Supp. 1186, 1192 (S.D.N.Y.1986).

To say the least, the details in Plaintiff's complaint are sparse. Plaintiff alleges in a conclusory nature that Defendants knew or should have known that Plaintiff did not meet the criteria of chronic alcohol dependancy. Plaintiff also alleges that the fraud occurred when Defendants referred Plaintiff to rehabilitative

services and unnecessary medical procedures.

The complaint fails to set forth with any particularity the "false or fraudulent pretenses, representations, or promises" that were made by Defendants, and which are required to establish a "mail fraud" predicate act. 18 U.S.C. § 1341. The complaint does state, in general terms, that the purpose of the fraudulent scheme was to profit from the insurance proceeds for improper placement of police officers in rehabilitation centers. However, Plaintiff fails to allege specific facts that support these allegations. At no point in his complaint does Plaintiff allege facts that support his claim that Defendant had reason to know that Plaintiff was not an alcoholic. Nor does Plaintiff point to any unnecessary procedures that he endured while undergoing rehabilitation. Rather, Plaintiff points to the referral of a patient to rehabilitative services and the subsequent insurance claims as evidence of fraud. However, the actions that Plaintiff points to are routine and do not give rise to the inference of fraud. See O'Malley v. New York City Transit Authority, 896 F.2d 704, 706-07 (2d Cir.1990) (finding that innocuous business communications, without more, fail to establish a mail fraud claim); Asbeka Industries v. Travelers Indemnity Co., 831 F. Supp. 74, 89 (E.D.N.Y.1993) (same). Plaintiff also alleges other facts, such as Defendant Gimblet's lapsed certification and Defendant McCarthy's subsequent employment at Long Island Recovery Center, but the Court finds that none of

these facts gives rise to an inference of fraud. In short, the complaint fails to set forth the specific fraudulent acts, statements, or omissions made by Defendants.

Plaintiff contends that exceptions are made to the Rule 9(b) standard when the defendant has exclusive possession of the documents and other evidence necessarily to plead with more particularity. Plaintiff argues that this exception should be applied to his complaint because evidence of the fraud is within City Defendant's possession. However, it is not clear to the Court why Plaintiff is not privy to the facts necessary to state his claim with more specificity. Plaintiff has access to his own medical records and was present for his treatment. Moreover, health care providers, such as Red Cross and GHI, are named as victims of the alleged fraud. Surely these providers would be more than willing to assist Plaintiff in identifying fraud. Therefore the lack of specificity in Plaintiff's complaint cannot be excused under this exception to Rule 9(b).

Plaintiff also attempts to correct the lack of particularity by pleading certain facts "on information and belief." However, while facts and evidence solely within a defendant's possession and knowledge may be pled "on information and belief," this does not mean that those matters may be pled lacking any detail at all. See First Capital Asset Mgmt., Inc. v. Satinwood, Inc., 385 F.3d 159, 180 (2d Cir.2004); DiVittorio v. Equidyne Extractive Indus., Inc., 822 F.2d 1242, 1247 (2d Cir.1987) ("[T]he allegations must be accompanied by a statement

of the facts upon which the belief is based.").

As a result, the complaint sets forth only general or conclusory allegations that fraudulent statements were made, and therefore fails to provide the particularity regarding the alleged fraud as required by Rule 9(b). Because of this failure, Plaintiff's RICO claims are dismissed against all Defendants; Plaintiff is granted leave to amend his complaint within 30 days of the date of this Order.

### 2. Specificity as to Defendants

Having already dismissed Plaintiff's RICO claim for failure to plead the fraud with sufficient particularity, it is not necessary to determine whether the complaint sufficiently identifies the predicate act that each defendant engaged in. However, given that Plaintiff has been granted leave to amend his complaint, the Court also notes that Plaintiff has failed to plead with the required specificity as to each defendant.

A complaint "sounding in fraud may not rely on sweeping references to acts by all or some of the defendants because each named defendant is entitled to be apprised of the facts surrounding the alleged fraud." Center Cadillac, Inc. v. Bank Leumi Trust Co., 808 F. Supp. 213, 230 (S.D.N.Y.1992). A plaintiff must demonstrate that each defendant had a specific intent to defraud either by devising, participating in, or aiding and abetting the scheme. See Morrow v. Black, 742 F. Supp. 1199, 1205 (E.D.N.Y.1990); Connors v. Lexington Insurance

<u>Co.</u>, 666 F. Supp. 434 (E.D.N.Y.1987).

Plaintiff does not meet these requirements in his complaint.  Instead, Plaintiff merely accuses handfuls of defendants of engaging in an alleged enterprise without identifying each defendants role in and relationship to the enterprise.  Therefore, Plaintiff fails to meet the requirement under Rule 9(b) that allegations of fraud must connect to each individual defendant. <u>See</u> <u>Luce v. Edelstein</u>, 802 F.2d 49, 54 (2d Cir.1986) ("Such allegations, which fail to specify the time, place, speaker, and sometimes even the content of the alleged misrepresentations, lack the 'particulars' required by Rule 9(b)"); <u>see also</u> <u>Landy v. Mitchell Petroleum Tech. Corp.</u>, 734 F. Supp. 608, 620 (S.D.N.Y.1990).

## B. RICO Conspiracy Claim

It is unlawful under 18 U.S.C. § 1962(d) to conspire to violate § 1962(a), (b), or (c). To state a RICO claim under subsection (d), plaintiff must establish that each defendant agreed personally to commit at least two predicate acts.  <u>See</u> <u>United States v. Teitler</u>, 802 F.2d 606, 612-13 (2d Cir.1986) (citing <u>United States v. Ruggiero</u>, 726 F.2d 913, 921 (2d Cir.1984), <u>cert. denied</u>, 469 U.S. 831 (1984)). A RICO conspiracy claim does not require an allegation that the defendant actually committed the substantive offenses, but the complaint must allege that each defendant agreed to personally commit at least two predicate acts.  <u>See</u> <u>Teitler</u>, 802 F.2d at 613.  It is not enough to allege that the defendant simply

agreed to the commission of two or more predicate acts by coconspirators.  See Ruggiero, 726 F.2d at 921.  General allegations that the defendants "conspired" in the scheme do not sufficiently attribute responsibility for fraud to each individual defendant.  Morin v. Trupin, 711 F. Supp. 97, 111 (S.D.N.Y.1989).  In order to survive a motion to dismiss, a plaintiff's complaint must allege "facts implying an [...] agreement involving each of the defendants to commit at least two predicate acts."  Hecht v. Commerce Clearing House, 897 F.2d 21, 25 (2d Cir.1990).  In other words, the complaint must allege "some factual basis for a finding of a conscious agreement among the defendants."  Id. at 26 n. 4.

Plaintiff's RICO conspiracy must then be dismissed for two reasons.  First, the complaint fails to state a substantive RICO claim and the conspiracy claim is based on the same set of allegations.  See, e.g., McLoughlin v. Altman, 92 CV 8106, 1993 WL 362407 *5 (S.D.N.Y. Sept.13, 1993) (dismissal of section 1962(c) claim mandated dismissal of conspiracy claim "because the latter claim relies on the same allegations as the Section 1962(c) claim"), aff'd, 22 F.3d 1091 (2d Cir.1994).

Second, conclusory allegations of an agreement, such as the ones found in Plaintiff's complaint, are insufficient to state a RICO conspiracy claim.  The complaint alleges no facts showing that individual defendants, by their words or actions, manifested a conscious agreement to commit any predicate acts.  Nor does the complaint allege facts showing knowledge by each of the defendants of the

existence of the other alleged predicate acts. Accordingly, Plaintiff's RICO conspiracy claim is dismissed, and he is granted leave to amend his complaint within 30 days of this Order.

### C. Plaintiff's §1983 Claims Under the First and Fourteenth Amendments

In order to state a claim under § 1983, a plaintiff must allege (1) that the challenged conduct was attributable at least in part to a person acting under color of state law, and (2) that such conduct deprived the plaintiff of a right, privilege or immunity secured by the Constitution or laws of the United States. See Dwares v. City of New York, 985 F.2d 94, 98 (2d Cir.1993). City Defendants contend that Plaintiff's fails to allege any cognizable constitutional claims in his complaint. We consider each of these claims in turn.

### 1. Freedom of Religion

Plaintiff alleges a violation of the Establishment Clause of the First Amendment as applied to the states through the Fourteenth Amendment. Specifically, he alleges that he was forced into the "Twelve Steps Religious Based Alcohol Anonymous Program" and was not offered any rehabilitation programs that were not religious in nature.

The Establishment Clause "guarantees that government may not coerce anyone to support or participate in religion or its exercise, or otherwise act in a way which establishes a state religion or religious faith." Lee v. Weisman, 505

U.S. 577, 587 (1992).  Plaintiff primarily relies on <u>Warner v. Orange County</u>

<u>Dep't of Prob.</u>, 115 F.3d 1068 (2d Cir.1997), in which the Court concluded that

the Twelve Steps of Alcoholics Anonymous are religious in nature for purposes of

the Establishment Clause.  Accordingly, the Court held that it was a violation of

the Establishment Clause for a probation officer to require someone to attend

Alcoholics Anonymous sessions.

City Defendants point to <u>Kreuter v. Reuter</u>, 01 CV 5229, 2002 U.S. Dist.

LEXIS 23350 at *28 (E.D.N.Y. December 5, 2002), to stand for the proposition

that Alcoholics Anonymous programs are not necessarily religious in nature.  In

<u>Kreuter</u>, the court noted that, in prior cases, the Twelve Steps were found to be

religious in nature primarily because of "constant references to God and prayer."

<u>Kreuter</u>, 01 CV 5229, 2002 U.S. Dist. LEXIS 23350 at *28.  The court

distinguished those previous cases and found that the plaintiff failed to allege that

he was "forced to pray to God or to acknowledge a particular God."  <u>Id.</u> at *29.

In this case Plaintiff fails to allege that he was forced to pray or

acknowledge any god at all.  Plaintiff's only alleges that the program was

"religious based," but does not indicate whether there were any references to god.

Moreover, it is unclear to the Court whether this was the name of the official

program or the just Plaintiff's description of the program.  Even if it were the

official name of the program, Plaintiff would still have to plead specific facts

indicating that the program actually impinged upon his First Amendment rights. Because Plaintiff has not done so, his claim must be dismissed.

### 3. Freedom of Speech

Plaintiff further alleges that his right to free speech was infringed upon because City Defendants retaliated against him after he criticized NYPD's order that he seek substance-abuse therapy. "It is well established that a public employer cannot [...] retaliate against an employee for the exercise of his or her First Amendment free speech right." Ezekwo v. N.Y.C. Health & Hosp. Corp., 940 F.2d 775, 780 (2d Cir.1991). To successfully maintain a First Amendment free speech cause of action against City Defendants, Plaintiff must establish the following: (1) his speech is constitutionally protected; (2) he suffered an adverse employment action; and (3) his speech was a motivating factor in the adverse employment decision. See Phillips v. Bowen, 278 F.3d 103, 108 (2d Cir.2002). For purposes of this analysis, speech is deemed "constitutionally protected" if it can "be fairly characterized as constituting speech on a matter of public concern." Connick v. Myers, 461 U.S. 138, 147-48 (1983). "Whether an employee's speech addresses a matter of public concern must be determined by the content, form, and context of a given statement as revealed by the whole record." Id.

In the employment context, a discrimination suit will fail where the employee speaks "not as a citizen upon matters of public concern, but instead as

an employee upon matters only of personal interest." <u>Id.</u> at 147. "Speech that

relates primarily to matters of personal interest or internal office affairs, in which

the individual speaks as an employee rather than as a citizen, cannot support a

First Amendment claim." <u>Collins v. Christopher</u>, 48 F. Supp. 2d 397, 408

(S.D.N.Y. 1999)(citing <u>Saulpaugh v. Monroe Community Hospital</u>, 4 F.3d 134,

143 (2d Cir. 1993)). As stated above, Plaintiff believes that his criticism of the

decision to send him to a rehabilitation clinic was protected speech. However, his

speech was solely related to matters of personal interest in that he was speaking as

an employee rather than as a citizen. Accordingly, to the extent that Plaintiff's §

1983 action is based upon a violation of his right to Free Speech, that claim is

dismissed with prejudice.

### 3. Freedom of Movement, Association and Assembly

Although Plaintiff alleges violations of his freedom of "movement,"

"association" and "assembly," nowhere in his complaint is there any factual basis

to support such a charge. In fact, if such a claim is even made out, it is so

"confused, ambiguous, vague [and] otherwise unintelligible that its true substance,

if any, is well disguised." <u>Salahuddin v. Cuomo</u>, 861 F.2d 40, 42 (2d Cir.1988)

(stating that "the principal function of pleadings under the Federal Rules is to give

the adverse party fair notice of the claim asserted so as to enable him to answer

and prepare for trial" (citations omitted)); <u>see also</u> Fed.R.Civ.P. 8(a)(2) (requiring

that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief"). Because the complaint does not support a violation of Plaintiff's right to movement, association and assembly, to the extent that his § 1983 claim rests upon such a violation, that claim is dismissed without prejudice and Plaintiff is granted leave to amend his complaint within 30 days of this Order.

### 4. Due Process

Plaintiff also alleges a violation of his Fourteenth Amendment due process rights because he was deprived of property without due process of law. Although City Defendants concede that Plaintiff has a property interest in his employment, they contend that there was no due process violation because Plaintiff could have challenged his termination in an Article 78 proceeding.

There is no constitutional violation, and thus no available § 1983 action, when a plaintiff has access to an adequate state post-deprivation procedure to remedy a random, arbitrary deprivation of property or liberty. See Zinermon v. Burch, 494 U.S. 113, 132 (1990); Hudson v. Palmer, 468 U.S. 517, 531 (1984). Moreover, it is well established that "an Article 78 proceeding is a perfectly adequate post-deprivation remedy" in the context of employment termination. Hellenic Am. Neighborhood Action Comm. v. City of New York, 101 F.3d 877, 880 (2d Cir.1996); Interboro Inst., Inc. v. Foley, 985 F.2d 90, 93 (2d Cir.1993); McDarby v. Dinkins, 907 F.2d 1334, 1338 (2d Cir.1990); Alfaro Motors, Inc. v.

17

Ward, 814 F.2d 883, 888 (2d Cir.1987); Giglio v. Dunn, 732 F.2d 1133, 1135 (2d Cir.1984). Because Plaintiff could have challenged his employment status in an Article 78 proceeding, his due process claim fails as a matter of law. See Locurto v. Safir, 264 F.3d 154, 174-5 (2d Cir.2001).

### 5.Privacy

Plaintiff further claims that City Defendants actions resulted in a violation of his constitutional right to privacy. However, as City Defendants correctly point out, Plaintiff, as a police officer, is not entitled to the same privacy rights as the average citizen. "The privacy expectations of any particular group is markedly diminished by such factors as the employees' voluntary pursuit of a position they know to be pervasively regulated for reasons of safety and the employees' acceptance of severe intrusions upon their privacy." Seelig v. Koehler, 76 N.Y.2d 87, 91(1990) (citing National Treasury Employees Union v. Von Raab, 489 U.S. 656, 668 (1989); Skinner v. Railway Labor Executives' Assn., 489 U.S. 602, 618 (1989).

Plaintiff voluntarily joined the NYPD, an organization that is not only highly regulated, but whose regulations are often predicated on the numerous safety concerns it faces as the primary protector of New York City. Because police officers' work is, by definition, safety-sensitive, it is a justifiable intrusion upon a police officer's privacy to ensure that he or she is mentally and physically

fit to carry out the duties and responsibilities required of a member of the service.
See Biehunik v. Felicetta, 441 F.2d 228, 231 (2d Cir.1971). By joining such an
organization, Plaintiff implicitly accepted greater intrusions upon his privacy.
See, e.g., Poole v Stephens, 688 F. Supp. 149, 155 (D.N.J. 1988) (finding that
correction officers' privacy expectation was diminished by the safety
considerations of their work).  To the extent that Plaintiff's § 1983 action is
predicated upon an unconstitutional intrusion on his privacy, that claim is
dismissed as a matter of law.

### D. § 1983 Claim Under False Imprisonment

Plaintiff alleges in his complaint that on October 21, 2005, he was arrested
and detained by members of the New York City Police Department for operating a
police vehicle while under the influence of alcohol.  Plaintiff also alleges that he
had not consumed any "intoxicants" and that he was not driving under the
"influence of an intoxicant."  If the Court takes each and every factual allegation
in the complaint to be true, as it must when considering and 12b(6) or 12(c)
motion, then Plaintiff has made out a claim of false imprisonment.  City
Defendants' Motion for Judgment on the Pleadings as to the false imprisonment
claim is denied.

## E. § 1981 Claim

Section 1981 provides:

> All persons within the jurisdiction of the United
> States shall have the same right in every State and
> Territory to make and enforce contracts, to sue, be
> parties, give evidence, and to the full and equal
> benefit of all laws and proceedings for the security of
> persons and property as is enjoyed by white citizens,
> and shall be subject to like punishment, pains,
> penalties, taxes, licenses, and exactions of every
> kind, and to no other.

42 U.S.C. § 1981.  To succeed under § 1981, plaintiff must allege and prove that

the defendants' actions were purposefully discriminatory and racially motivated.

See Albert v. Carovano, 851 F.2d 561 (2d Cir.1988).  However, a plaintiff may not

rely on entirely conclusory allegations.  Id.; Martin v. New York State Dept. of

Mental Hygiene, 588 F.2d 371 (2d Cir.1978) ("It is well settled ... that a complaint

consisting of nothing more than naked assertions, and setting forth no facts upon

which a court could find a violation [...], fails to state a claim under Rule

12(b)(6)").  Thus, essential to an action under Section 1981 are allegations that the

defendants' acts were purposefully discriminatory, General Bldg. Contractors

Ass'n v. Pennsylvania, 458 U.S. 375, 391 (1982), and racially motivated, see

Zemsky v. City of New York, 821 F.2d 148, 150 (2d Cir.1987).

Plaintiff simply alleges no facts that support a § 1981 claim.  Moreover, no

claim is made in the complaint or elsewhere that Plaintiff is African-American,

Latin, or any other minority. As such, Plaintiff fails to allege facts sufficient to raise even an inference of racial discrimination and his § 1981 claim must be dismissed.[2]

### F. § 1985(3) Claim

In order to prevail on a § 1985(3) claim, a plaintiff must show: (1) a conspiracy; (2) for the purpose of depriving, either directly or indirectly, any person or class of persons of equal protection of the laws, or of equal privileges and immunities under the laws; (3) an act in furtherance of the conspiracy; (4) whereby a person is either injured in his person or property or deprived of any right of a citizen of the United States. See Mian v. Donaldson, Lufkin & Jenrette Securities Corp., 7 F.3d 1085, 1088 (2d Cir.1993)(citing United Bhd. of Carpenters, Local 610 v. Scott, 463 U.S. 825, 828-29 (1983)). Also, the conspiracy must also be motivated by "some racial or perhaps otherwise class-based, invidious discriminatory animus behind the conspirators' action." Id.

Plaintiff has failed to show that any conspiracy existed because he fails to allege any facts that would support the conclusion that City Defendants came to

---

[2] City Defendants moved for dismissal on the grounds that Plaintiff had not suffered an adverse employment action. The Court has reviewed that claim and found it meritless because any suspension and/or increased supervision is considered an adverse employment action. See Terry v. Ashcroft, 336 F.3d 128, 143 (2d Cir.2003). Plaintiff's claim fails not because he has not been harmed but because he does not establish a nexus between his harm and his race in his complaint.

any agreement. The lone allegation in Plaintiff's complaint that comes anywhere near establishing some agreement between the parties is that Defendant McCarthy is now employed by the Long Island Center for Recovery. However, the Long Island Center for Recovery is not a named party in Plaintiff's complaint, so it is unclear to this Court how this fact indicates any conspiracy between Defendant LIRC and City Defendants.

Moreover, even if there was a conspiracy, Plaintiff fails to show that the conspiracy was motivated by any racial or class-based discrimination. There is nothing in the complaint to suggest that City Defendants' decision to send Plaintiff for substance abuse treatment was discriminatory. Accordingly, Plaintiff's claims that rest upon a violation of § 1985(3) are dismissed.

### G. Qualified Immunity

The individual City defendants Raymond W. Kelly, George A. Grasso, Rafael Piniero, George W. Anderson, Michael P. O'Neill, Charles Carlozzi, Michael Bahrenburg, Sam Willis, Paul Rayward, Alberto Martinez, Arianna Donovan, Neldra M. Zeigler, Kevin Holloran, Daniel Sweeney, Suzanne Gimblet, Christine Carlozzi, Charles V. Campisi, Edward A. Thompson, Captain Valluzzi (sic), and Lieutenant Doherty (sic) contend that they are entitled to qualified immunity on all constitutional claims. "[Q]ualified immunity is an affirmative defense and . . . 'the burden of pleading it rests with the defendant.'" <u>Crawford-El</u>

v. Britton, 523 U.S. 574, 587 (1998) (quoting Gomez v. Toledo, 446 U.S. 635, 639-641 (1980)).  "A defendant asserting a qualified immunity defense at the 12(b)(6) stage . . . faces a 'formidable hurdle.'"  Sales v. Barizone, 03 CV 6691, 2004 WL 2781752 *15 (S.D.N.Y. Dec. 2, 2004) (quoting McKenna v. Wright, 386 F.3d 432, 434 (2d Cir.2004)).  The Supreme Court has stressed that "[t]he procedural difference between the absolute and qualified immunities is important.  An absolute immunity defeats a suit at the outset, so long as the official's actions were within the scope of the immunity.  The fate of an official with qualified immunity depends upon the circumstances and motivations of his actions, as established by the evidence at trial."  Green v. Maraio, 722 F.2d 1013, 1018 (2d Cir.1983) (citing Imbler v. Pachtman, 424 U.S. 409, 419 n.13 (1976)).  Because the evidence supporting a finding of qualified immunity is normally adduced during the discovery process and at trial, "the defense of qualified immunity [usually] cannot support the grant of a Fed.R.Civ.P. 12(b)(6) motion for failure to state a claim upon which relief can be granted."  Id.

A defendant presenting an affirmative defense of qualified immunity through a Rule 12(b)(6) motion must contend with the requirement that a Rule 12(b)(6) motion may be granted "only where it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim that would entitle him to relief.'"  Sales, 2004 WL 2781752 at *15 (quoting McKenna, 386 F.3d at 436).

"[T]he plaintiff is entitled to all reasonable inferences from the facts alleged, not only those that support his claim, but also those that defeat the immunity defense." McKenna, 386 F.3d at 436.

A qualified immunity defense may be established in a 12(b)(6) motion when the defense is based on facts appearing on the face of the complaint. McKenna, 386 F.3d at 436. However, there are no facts in the complaint that support a finding of qualified immunity for any City Defendants. Although the discovery process may inevitably establish the defense at a later stage of litigation such as a motion for summary judgment, a finding of qualified immunity is inappropriate at this juncture.

### H. Common Law Claims of Unjust Enrichment and Aiding and Abetting of Breach of Fiduciary Duty

Federal courts entertaining state law claims are obligated to apply the state's notice-of-claim provision. See Felder v. Casey, 487 U.S. 131, 151 (1988). Plaintiff's common law state claims for unjust enrichment and aiding and abetting of breach of fiduciary duty must therefore be dismissed because Plaintiff has failed to serve a timely notice of claim upon the City of New York, a prerequisite to maintaining tort claims against the City. See Gaston v. New York City Dept. of Health Office of Chief Medical, 432 F. Supp. 2d 321(S.D.N.Y.2006); O'Diah v. City of New York, 02 CV 274, 2003 WL 182932 *1 (S.D.N.Y. Jan. 28, 2003).

24

Section 50-e of the New York General Municipal Law provides that the notice of claim in tort claims against the City must be filed "within ninety days after the claim arises." N.Y. Gen. Mun. Law § 50-e. If a plaintiff fails to timely file a notice of claim, his complaint will be dismissed. See Corcoran v. New York Power Auth., 202 F.3d 530, 541 (2d Cir.1999); O'Diah, 2003 WL 182932 at *2. Plaintiff, in his opposition papers, Plaintiff never contends that a notice of claim was filed. Rather, Plaintiff contends that notice of claim was not necessary because "notice of claim is not required in cases of employment discrimination." Pl.'s Mem. In Opp. The Court is left to conclude that a notice of claim was, in fact, not filed. Accordingly, Plaintiff's common law state claims are dismissed for failure to file a timely notice of claim.

### I. Plaintiff's Claims Under N.Y.C. Administrative Code § 14-115

New York City Administrative Code § 14-115 broadly empowers the Police Commissioner to discipline members of the force for a wide range of infractions, including "any criminal offense, or neglect of duty, violation of rules, or neglect or disobedience of orders, or absence without leave, or any conduct injurious to the public peace or welfare, or immoral conduct or conduct unbecoming an officer, or any breach of discipline." Admin. Code of City of N.Y. § 14-115. The Commissioner is authorized to discipline officers "by reprimand, forfeiting and withholding pay for a specified time, suspension, without pay during such

suspension, or by dismissal from the force."  Id.

To protect officers' rights and prevent abuse, Administrative Code § 14-116 ("Limitations of suits") authorizes an article 78 proceeding "to procure the restoration or reinstatement to the force or department of any member or officer thereof, if such proceeding be instituted within four months after the decision or order sought to be reviewed."  Administrative Code of City of NY § 14-116(b).

Under New York State law, these provisions have been interpreted as "leav[ing] the disciplining of police officers, including the right to determine guilt or innocence of breach of disciplinary rules and the penalty to be imposed upon conviction, to the discretion of the Police Commissioner, subject, of course, to review by the courts pursuant to CPLR article 78."  Montella v. Bratton, 93 N.Y.2d 424, 429-30 (1999) (quoting Matter of City of New York v MacDonald, 201 A.D.2d 258, 259 (1st Dept.1994)).  Accordingly, any claim Plaintiff brings under New York City Administrative Code § 14-115 must be dismissed with prejudice.

## CONCLUSION

Plaintiff's RICO claims are DISMISSED without prejudice.  Plaintiff is granted leave to amend his complaint within 30 days of this Order.

To the extent that Plaintiff's constitutional claims against City Defendants are based upon infringements of his right to free speech, privacy, and due process, these claims are DISMISSED with prejudice.  To the extent that Plaintiff's

constitutional claims are based upon false imprisonment, City Defendants' motion to dismiss is DENIED. The remaining grounds for Plaintiff's constitutional claims are DISMISSED without prejudice and Plaintiff is granted leave to amend his complaint within 30 days of this Order.

Plaintiff's claims under §§ 1981 and 1985(3) are DISMISSED as to all Defendants without prejudice and Plaintiff is granted leave to amend his complaint within 30 days of this Order.

Plaintiff's state law claims as to City Defendants are DISMISSED with prejudice. Plaintiff's claims based on the New York City Administrative Code are DISMISSED with prejudice.

SO ORDERED.

Dated: March 30, 2007                                    _____
      Brooklyn, New York                                    Senior U.S.D.J.